# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
\* \* \*

| | |
|---|---|
| PAUL SCOTT KLEIN,<br><br>  Plaintiff,<br><br>v.<br><br>BRIAN WILLIAMS, *et al.*,<br><br>  Defendants. | Case No. 3:19-CV-00300-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 46] |

This case involves a civil rights action filed by Plaintiff Paul Klein ("Klein") against Defendants Gregory Bryan ("Bryan"), Benjamin Estill ("Estill"), Louie Gallo ("Gallo"), Javier Garcia ("Garcia"), and Sean Hankerd ("Hankerd") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 46, 48.)[2] Klein opposed the motion, (ECF No. 50), and Defendants replied. (ECF No. 52.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 46), be granted.

I.  **FACTUAL BACKGROUND**

Klein is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently incarcerated the Northern Nevada Correctional Center ("NNCC"). On June 4, 2019, Klein filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Klein was incarcerated at the High Desert State Prison ("HDSP"). (ECF Nos. 1, 19.) Specifically, Klein alleges: (1) a First Amendment retaliation claim against Defendants Estill, Garcia, Gallo, and Hankerd; and (2) an Eighth Amendment deliberate indifference to serious medical needs claim based on denial of

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] ECF No. 48 consists of Klein's medical records filed under seal.

treatment for Hepatitis C ("Hep-C") against Defendant Bryan. (ECF No. 24.)

### A. Facts Related to First Amendment Retaliation Claim

On August 5, 2018, Defendants Gallo and Hankerd performed a cell compliance check on Klein's cell. (ECF No. 46-2.) Multiple items were confiscated during the cell check. (*Id.*) Klein, and his cellmate, received a notice of charges in relation to the confiscated items. (*Id.*) At the disciplinary hearing, Klein was charged with MJ26, possession of contraband, but pled guilty to a reduced charge of M5 dirty cell. (ECF No. 46-3.) Because he pled guilty, he waived his appeal rights. (*Id.*)

On August 10, 2018, Klein filed a grievance claiming the cell search was performed in retaliation for Klein previously filing a lawsuit against Defendant Estill. (ECF No. 46-1 at 9-11.) The response to the grievance stated Klein failed to provide any credible evidence to support his allegations and the officers were within the scope of their duties in conducting cell searches. (*Id.* at 2, 5, 8.) Since this matter was filed, he has filed at least one lawsuit in the Eighth Judicial District Court of the State of Nevada, A-21-838860-C filed 8/3/2021. (ECF No. 46-4.) Klein also has submitted multiple grievances between the date of the incident and 2021. (ECF No. 46-5.)

In support of motion for summary judgment, Defendants Estill, Garcia, Gallo, and Hankerd each filed declarations in relation to the retaliation claim. Defendant Estill states he does not have knowledge of Klein's complaint, he never instructed staff to search Klein's cell, and Estill has never conducted or instructed others to conduct an unlawful search. On the day in question, Estill was assigned to operations and not in a position to instruct others to perform a search on Klein's cell. The officers assigned to the 9/12 quad were under the chain of command of Lt. Matousek. (ECF No. 46-10.)

Defendants Garcia, Gallo, and Hankerd state they do not have knowledge of Klein's complaint, they were not instructed by Estill to search Klein's cell, and they have never conducted or instructed others to conduct an unlawful search. Random searches are often conducted at HDSP because if inmates are aware of a pending search, they will be able to hide or dispose of contraband. The officers assigned to the 9/12 quad were

under the chain of command of Lt. Matousek and not Defendant Estill. (ECF Nos. 46-11, 46-12, 46-13.) Defendant Garcia additionally stated he did not recall searching a cell on the day in question. (ECF No. 46-11.) Defendant Hankerd additionally stated he does not recall ever having a negative encounter with Klein. (ECF No. 46-13.)

### B. Facts Related to Eighth Amendment Deliberate Indifference Claim

Hep-C is a blood borne pathogen transmitted primarily by way of percutaneous exposure to blood. Chronic Hep-C is diagnosed by a qualified medical practitioner. Chronic Hep-C results in liver fibrosis. (ECF No. 46-9 at 2 (Declaration of Dr. Minev).) Fibrosis is the initial stage of liver scarring. (*Id.*) Chronic Hep-C builds up fibrosis (scar tissue) in the afflicted person's liver. (*Id.*) When the fibrosis increases, it can lead to cirrhosis of the liver, a liver disease that forestalls common liver function. (*Id.*) When liver cells are not functioning, certain clinical signs will appear on the patient, which include but are not limited to: (1) spider angiomata (vascular lesions on the chest and body); (2) palmar erythema (reddening of the palms); (3) gynecomastia (increase in breast gland size); (4) ascites (accumulation of fluid in the abdomen); and (5) jaundice (yellow discoloration of the skin and mucous membranes). (*Id.*)

Medical Directive ("MD") 219 governs treatment of Hep-C at the NDOC. (*See* ECF No. 46 at 7.) At the time Klein filed his initial grievance related to his Hep-C treatment, inmates that tested positive for Hep-C were enrolled in the Infectious Disease Chronic Clinic for Hepatitis C. (*Id.*) A committee made up of at least three senior members of the medical department reviewed each Hep-C positive inmate and evaluated treatment options. (*Id.*)

A non-invasive method of procuring a patient's Chronic Hep-C progression, in addition with the clinical signs, is through the Aspartate Aminotransferase Platelet Ratio Index ("APRI") formula. (ECF No. 46-9 at 3.) To calculate a patient's APRI score, the patient's blood platelet count, which is obtained through a blood test, is necessary. (*Id.*) An APRI score is calculated using the AST to Platelet Ratio Index. (*Id.*) NDOC prioritized treatment based on an inmates APRI score. (ECF No. 46 at 7.) Inmates with an APRI

score greater than 2 were prioritized for direct acting antiviral treatment ("DAA"). (*Id.*) DAA treatment, such as Epclusa, is an FDA-approved treatment for Hep-C. (ECF No. 46-6 at 17 (defining DAA).) Inmates with a score of less than 2 were not prioritized for the Hep-C DAA treatment protocols but did receive treatment and monitoring through the Hep-C Clinic. (ECF No. 46 at 7.)

The current version of MD 219 ensures each inmate has been or is tested for Hep-C, and that those inmates who test positive, and who do not make the voluntary choice to opt out of treatment, will be treated with DAAs. (ECF No. 46-6 at 17-22.) The policy applies to all inmates unless there are medical issues that would make doing so cause more harm. (*Id.*) MD 219 established three priority levels for DAA treatment. This priority level system guarantees that all Hep-C patients will receive DAAs as needed and required to treat their condition, while at the same time providing medical personnel with discretion and flexibility to safeguard that those in a lower level of priority obtain expedited DAA treatment when in the sound judgment of the medical provider examining the patient it is determined that it is medically necessary. (*Id.* at 20.)

Klein was first diagnosed by NDOC medical staff with Hep-C on December 13, 2018. (ECF Nos. 48-1 at 2 (sealed); 48-5 (sealed); 50-1 at 7.) At that time, Klein was enrolled in the NDOC Chronic Disease Clinic for hypertension and chronic obstructive pulmonary disease, but not Hep-C. (*See* ECF No. 48-2 (sealed).) A Hep-C panel was suggested and performed based on care received through the Chronic Disease Clinic. (*Id.* at 3.) Defendant Bryan ordered blood work in August 2018, which showed a slight elevation of the AST score and an APRI score of 0.69. (ECF Nos. 48-13 (sealed); 48-5 (sealed).) Blood tests conducted in December 2018 showed a fibrosis score of 0.8, which is indicative of cirrhosis. (ECF Nos. 48-3 (sealed); 48-5 (sealed).)

A Hep-C patient data form dated January 2, 2019, notes that Klein was enrolled in the Hep-C Infectious Disease Chronic Clinic and had advanced hepatic fibrosis/cirrhosis. (ECF No. 48-5 (sealed).) Klein was submitted for treatment to the Hep-C panel on January 2, 2019 and was approved on January 15, 2019. (ECF Nos. 48-5 (sealed); 48-6 (sealed).)

Pre-treatment labs were performed on March 2, 2019. (ECF No. 48-6 (sealed).) An ultrasound was performed on May 8, 2019. (ECF Nos. 48-6 (sealed); 48-7 (sealed).) Findings from the ultrasound showed "mild nodularity of the surface contour of the liver consistent with cirrhosis. No focal mass lesion identified… [and] mild hepatomegaly." (ECF No. 48-7 (sealed).)

On May 30, 2019, Klein was seen by Dr. Kalathil at Digestive Health Associates of Reno. (ECF No. 48-8 (sealed).) Klein was told he needed an endoscopy to test for esophageal or gastric varices, before Hep-C treatment could commence. (*Id.* at 4.) The procedure was approved on June 17, 2019. (ECF No. 48-9 at 4 (sealed).) The results were negative for varices. (ECF No. 48-12 (sealed).) Following these tests, Klein received DAA treatment. (ECF Nos. 48-10 (sealed); 46 at 4.) Post-treatment lab results dated April 22, 2020, show no detectable Hep-C in Klein's blood. (ECF No. 48-11 at 3 (sealed).)

Defendant Bryan, former Senior Physician for the NDOC at HDSP, filed a declaration in support of the motion for summary judgment, stating Klein has been under the continuous care of many doctors employed by the NDOC and has been seen and treated for various ailments over his time at NNCC. Bryan is not, and has never been, a member of the Hepatitis Review Committee tasked with the responsibility of approving Hep-C treatment and Bryan never denied Klein treatment. Bryan does not recall Klein and does not have access to his records, but he does not recall ordering DAA medication for Klein. Bryan never told Klein that further tests would be performed to determine why his liver functions were abnormal, as Bryan does not recall if, in fact, Klein's liver functions were abnormal. (ECF No. 46-8.)

In support of his opposition to the motion for summary judgment, Klein provides Defendant Bryan's responses to interrogatories, which state that he has no recollection of Klein and could not locate any evidence that he delivered medical care to him. Bryan did not form an opinion as to Klein's Hep-C status or treatment and there is no evidence in medical records that Bryan treated Klein. (ECF No. 50-2.)

///

     Michael Minev, NDOC's current Medical Director, filed a declaration in support of the motion for summary judgment, stating as follows: if a patient's APRI score is above 0.5, there is likely some liver damage (fibrosis) and if the APRI score is above 1.5, the patient likely has or is quickly approaching cirrhosis of the liver. The APRI score is not definitive but is a reliable indicator of liver fibrosis. As part of his duties, Minev oversees the Chronic Hep-C treatment program at Southern Desert Correctional Center. He has reviewed test results and medical records of NDOC inmates to determine who required advanced forms of Hep-C treatment. In addition to APRI scores, Minev also considers the inmates' clinical signs of forestalled or reduced liver function. He almost always declined to recommend an NDOC inmate with Hep-C, who has an APRI score near or below 1.0 for advanced forms of Hep-C treatment due to risk that drug intervention may cause to a patient with Hep-C. All inmates who test positive for Hep-C and are otherwise medically indicated receive advanced treatment. (ECF No. 46-9.)

     Moreover, as to Klein specifically, Minev stated he reviewed Klein's medical records and can attest that Klein suffered from Chronic Hep-C and his APRI score, based on blood test results in August 2018, was 0.69. Klein did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Based on Klein's APRI score and lack of clinical signs indicating decreased liver function, Klein was not a candidate for Hep-C treatment at the time of his grievance. Minev had no specific knowledge of Klein's claims prior to responding to his medical grievance. Minev's grievance response that Klein would receive treatment was accurate and Klein had already been approved from treatment when Minev responded. Minev never personally examined or treated Klein. (ECF No. 46-9 at 4.)

     In support of his opposition to the motion for summary judgment, Klein includes the expert report of Dr. Amanda Cheung. (ECF No. 50-3.) Dr. Cheung's report discusses the standard of care for Hep-C treatment. The summary of her report is as follows:

     Based on the review of the medical documents available on these six

> individuals, it is my opinion that Hep-C treatment was delayed. If these individuals were seen in the outpatient sector, treatment would have been recommended immediately upon diagnosis regardless of fibrosis staging. Currently, the purpose of fibrosis staging is to determine the correct type and length of therapy, rather than to determine whether to provide therapy.

(*Id.* at 7.) Dr. Cheung's report additionally states that "chronic Hep-C infection carries increased morbidity and mortality risk. Once there is progression to cirrhosis, patients may develop liver failure and liver cancer. Even after Hep-C cure, the risk of liver cancer persists. Thus, the ultimate goal is to achieve Hep-C cure prior to development of cirrhosis." (*Id.* at 6.) Importantly, Dr. Cheung's report <u>does not</u> address whether Klein suffered any harm based on or because of the delay in treatment.

Finally, in support of his opposition, Klein provides the deposition transcripts from Defendant Minev and from Defendant's expert, Dr. Chad Zawitz. (ECF Nos. 50-4, 50-6.) The depositions focus more generally on treatment of Hep-C and NDOC's policy but do not specifically address Klein. (*See id.*)

## II.     PROCEDURAL HISTORY

On June 4, 2019, Klein initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Klein was incarcerated at NNCC. (ECF Nos. 1, 19.) On August 14, 2019, counsel made an appearance on behalf of Klein. (ECF No. 8.) Counsel filed a first amended complaint on behalf of Klein. (ECF No. 24.) On screening, the District Court permitted Klein to proceed with his first amended complaint which alleges: (1) a First Amendment retaliation claim against Defendants Garcia, Gallo, Hankerd, and Estill; and (2) an Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Bryan. (ECF No. 26.)

Around the same time Klein filed his complaint, many other individuals in the custody of the NDOC filed similar actions alleging that NDOC's policy for treating Hep-C amounts to deliberate indifference in violation of the Eighth Amendment. (ECF No. 16.) As a result, the Court consolidated numerous actions, including Klein's case, for the purpose of conducting consolidated discovery. (*Id.; see also In Re Hep-C Prison Litigation*, 3:19-CV-00577-MMD-CLB.)

Following an additional period of discovery, on June 30, 2022, Defendants filed their motion for summary judgment arguing Klein cannot prevail as: (1) Klein was treated appropriately and in accordance with the medical directives and standards of care; (2) Klein is not entitled to recover on his retaliation claim; (3) Defendants Bryan and Estill did not personally participate in the alleged constitutional violations; and (4) Defendant Bryan is entitled to qualified immunity. (ECF No. 46.) Klein opposed the motion, (ECF No. 50), and Defendants replied. (ECF No. 52.)

### III.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v.*

*Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

(9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

IV.   **DISCUSSION**

   A.   **Retaliation**

Klein's first claim for relief alleges Defendants Garcia, Gallo, Hankerd, and Estill took adverse and chilling state action because of Klein's protected conduct of filing lawsuits and alleges the adverse action did not have a legitimate correctional goal. (ECF No. 24 at 2.)

///

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). A retaliation claim has five elements: (1) a state actor took some adverse action against the inmate, (2) because of, (3) the inmate's protected First Amendment conduct, and that the action, (4) chilled the inmate's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68.

To prevail against Defendants' motion for summary judgment, Klein must demonstrate a triable issue of material fact on each element of his retaliation claim. *Brodheim*, 584 F.3d at 1269 n.3. In support of summary judgment, Defendants argue Klein cannot carry his burden with respect to elements two, four, and five. (ECF No. 46 at 12.)

The Court focuses its analysis on the fifth element—whether the search reasonably advanced a legitimate correctional goal. To establish this element, Klein bears the burden of pleading the absence of any legitimate correctional goals. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity). Klein must show Defendants acted with a retaliatory motive and that the Defendants' actions "were arbitrary and capricious," or "were unnecessary to the maintenance of order in the institution." *Watison*, 668 F.3d at 1114-15.

Defendants argue the cell search advanced a legitimate correctional goal of keeping contraband and excess property out of cells. Contraband and excess property was in fact removed from Klein's cell and Klein ultimately pled guilty to a reduced charge related to the confiscation of contraband at his disciplinary hearing. (ECF No. 46-4.) In response to Defendants' argument that there was a legitimate penological response for

1 the search because the search resulted in the confiscation of contraband, Klein asserts
2 that because disciplinary action was not taken against other inmates with contraband in
3 adjacent cells, this shows the search was designed to retaliate against him and not to
4 serve a correctional goal. (ECF No. 50 at 13.) Klein does not provide any proof, other
5 than his own affidavit, (ECF No. 50-1), that the search did not reasonably advance a
6 legitimate correctional goal or that no one else received a notice of charges. Further,
7 Klein's statement that no one else received a notice of charges is directly contradicted by
8 his own admission that his <u>cellmate</u> also received a notice of charges in relation to the
9 confiscated items. (ECF No. 46-2.) Viewing the facts in the light most favorable to Klein,
10 a reasonably jury could find the cell search, which uncovered contraband, was necessary
11 for maintaining order and safety in the institution and Klein does not come forward with
12 any evidence to the contrary.

13 Based on the above, the Court recommends that Defendants' motion for summary
14 judgment as to retaliation claim be granted.

15 **B.  Deliberate Indifference to Serious Medical Needs**

16 The Eighth Amendment "embodies broad and idealistic concepts of dignity,
17 civilized standards, humanity, and decency" by prohibiting the imposition of cruel and
18 unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal
19 quotation omitted). The Amendment's proscription against the "unnecessary and wanton
20 infliction of pain" encompasses deliberate indifference by state officials to the medical
21 needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that
22 "deliberate indifference to a prisoner's serious illness or injury states a cause of action
23 under § 1983." *Id.* at 105.

24 Courts in Ninth Circuit employ a two-part test when analyzing deliberate
25 indifference claims. The plaintiff must satisfy "both an objective standard—that the
26 deprivation was serious enough to constitute cruel and unusual punishment—and a
27 subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal
28 quotation omitted). First, the objective component examines whether the plaintiff has a

"serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the

13

treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 1. Analysis

Starting with the objective element, the parties agree that Klein's Hep-C constitutes a "serious medical need." However, Defendants argue summary judgment should be granted because Klein cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Klein's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Klein's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Klein to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, as detailed above, Defendants submitted authenticated and undisputed evidence regarding the medical treatment Klein received while incarcerated related to his Hep-C. (*See* ECF Nos. 48-1, 48-2, 48-3, 48-4, 48-5, 48-6, 48-7, 48-8, 48-9, 48-10, 48-11, 48-12, 48-13 (sealed).) According to this evidence, Klein was first diagnosed by NDOC medical staff with Hep-C on December 13, 2018. (ECF Nos. 48-1 at 2 (sealed); 48-5 (sealed); 50-1 at 7.) At that time, Klein was enrolled in the NDOC Chronic Disease Clinic for hypertension and chronic obstructive pulmonary disease, but not Hep-C. (*See* ECF No. 48-2 (sealed).) A Hep-C panel was suggested and performed based on care received through the Chronic Disease Clinic. (*Id.* at 3.) Defendant Bryan ordered blood work in August 2018, which showed a slight elevation of the AST score and an APRI score of

0.69. (ECF Nos. 48-13 (sealed); 48-5 (sealed).) Blood tests conducted in December 2018 showed a fibrosis score of 0.8, which is indicative of cirrhosis. (ECF Nos. 48-3 (sealed); 48-5 (sealed).)

A Hep-C patient data form dated January 2, 2019, notes that Klein was enrolled in the Hep-C Infectious Disease Chronic Clinic and had advanced hepatic fibrosis/cirrhosis. (ECF No. 48-5 (sealed).) Klein was submitted for treatment to the Hep-C panel on January 2, 2019 and was approved on January 15, 2019. (ECF Nos. 48-5 (sealed); 48-6 (sealed).) Pre-treatment labs were performed on March 2, 2019. (ECF No. 48-6 (sealed).) An ultrasound was performed on May 8, 2019. (ECF Nos. 48-6 (sealed); 48-7 (sealed).) Findings from the ultrasound showed "mild nodularity of the surface contour of the liver consistent with cirrhosis. No focal mass lesion identified… [and] mild hepatomegaly." (ECF No. 48-7 (sealed).)

On May 30, 2019, Klein was seen by Dr. Kalathil at Digestive Health Associates of Reno. (ECF No. 48-8 (sealed).) Klein was told he needed an endoscopy to test for esophageal or gastric varices, before Hep-C treatment could commence. (*Id.* at 4.) The procedure was approved on June 17, 2019. (ECF No. 48-9 at 4 (sealed).) The results were negative for varices. (ECF No. 48-12 (sealed).) Following these tests, Klein received DAA treatment. (ECF Nos. 48-10 (sealed); 46 at 4.) Post-treatment lab results dated April 22, 2020, show no detectable Hep-C in Klein's blood. (ECF No. 48-11 at 3 (sealed).)

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively monitored and ultimately treated Klein's Hep-C—he was diagnosed with Hep-C in December of 2018, was approved for treatment in January of 2019, and was effectively cured of Hep-C by April of 2020. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Klein to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Klein's opposition primarily focuses on MD 219 and his assertion that medical standards required immediate treatment. (ECF No. 50 at 9-11.) Klein's opposition reiterates his claim, <u>without any admissible medical evidence</u>, that the delay in providing him treatment for his Hep-C caused him further damage, including cirrhosis. (*Id.* at 9.) To prove deliberate indifference, however, Klein must show that a delay in treatment <u>caused</u> further injury. *See Jett*, 439 F.3d at 1096. Klein's own expert witness does not allege that he sustained damage because of the alleged delay. (*See* ECF No. 50-3 at 7.) The expert's discussion of harm was in a general section relating to the standard of care, and not directed to Klein specifically. (*Id.* at 6.) Nonetheless, Klein's expert asserts that the proper standard of care is to begin treatment as soon as possible after a diagnosis, which is exactly what occurred in this case.

Aside from his own assertions, Klein provides no further evidence or support that a delay in treatment for his Hep-C was <u>the cause</u> of any damage. He has not come forward with evidence to show Defendants knew of an excessive risk to his health and disregarded that risk. The evidence before the Court shows Klein was treated for his Hep-C beginning within one month of his diagnosis, with full treatment and cure within 16 months of his diagnosis. There is no evidence showing that his Hep-C or any delay in providing treatment was <u>the cause</u> of any damage. Therefore, Klein has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744.

Moreover, to the extent that Klein's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Klein has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.*

Accordingly, Klein fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because Klein has only shown that he disagrees between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his Hep-C monitored for progression.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to medical deliberate indifference claim be granted.[3]

## V.  CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 46), be granted.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 46), be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

Dated this 25th day of October, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[3]  Because the Court finds that Klein's claims fail on the merits, the Court need not address Defendants' personal participation or qualified immunity arguments.